UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SENTRY SELECT INSURANCE COMPANY | : : : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : : | Civil Action No. 1:20-CV-9754 |
| v. | : : | **OPINION** |
| DELIA CLARK, Individually, and RAWLE & HENDERSON, LP | : : : | |
| Defendants. | : | |

This matter is before the Court on the motion filed by Defendants Delia Clark ("Clark") and Rawle & Henderson, LP (collectively "Defendants") to dismiss the Amended Complaint filed by Sentry Select Insurance Company ("SSI") [Dkt. 20], and SSI's Motion for Leave to File a Second Amended Complaint ("Motion for Leave"). [Dkt. 30]. For the reasons discussed below, the Court will deny Defendants' motion and grant SSI's Motion for Leave.

**I.  Factual Background**

SSI is an insurance company that provided insurance to JTP Management LLC ("JTP"), a trucking transportation company. [Dkt. 12, Am. Compl. ¶ 8]. SSI retained Defendant Clark, Counsel at the law firm Rawle & Henderson, LP ("the Firm"), to represent JTP in two lawsuits after Jeffrey Gaines ("Gaines"), a driver for JTP, crashed his tractor trailer on Interstate 295 on May 31, 2012 (collectively the "Underlying Litigation"). [Am. Compl. ¶ 8–10]. In the Underlying Litigation, two firefighters sought to recover from JTP, Gaines, Gaines's company ("Gaines Trucking"), and other defendants for injuries suffered while responding to the crash. [Am. Compl. ¶ 9]. The present lawsuit concerns Clark's handling of the Underlying Litigation.

1

### a. Contract Terms and Relationships

SSI and JTP entered into an insurance contract (the "SSI Policy") whereby SSI agreed to insure JTP when JTP leased its own vehicles to another "moto carrier" or when it leased vehicles from another "moto carrier." [Dkt. 25-3 at 7]. The SSI Policy states, among other things, that it would be JTP's primary insurance policy "if a written agreement between the other 'motor carrier' as the lessee does not require the lessor to hold you harmless…." and would be "[e]xcess over any other collectible insurance if a written agreement between the other 'motor carrier' as the lessor and you as the lessee requires the lessor to hold you harmless." [Dkt. 25-3 at 7].

SSI also entered an "independent authority agreement" (the "IAA") with Gaines whereby JTP leased one "motor truck" from Gaines. [Dkt. 25-3 at 2]. The IAA states, in pertinent part, that Gaines agreed "to carry public liability insurance with proper rider or omnibus clause so as to fully protect [JTP] in the amount of $1,000,000 auto liability … for any accidents that may occur while under JTP request service." [*Id.*].

Gaines contracted with the Owner-Operator Independent Drivers' Association ("OOIDA") to insure Gaines, his truck, and Gaines Trucking (the "OOIDA Policy"). [Am. Compl. ¶ 11]. The OOIDA Policy states, in pertinent part, that

> [w]hile any covered "auto" is hired or borrowed from you by another "motor carrier" for hire, this Coverage Form's liability coverage [is]:
>
> (1) Primary if a written agreement between you as the lessor and the other "motor carrier" for hire as the lessee requires you to hold the lessee harmless.
>
> (2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" for hire as the lessee does not require you to hold the lessee harmless.

[Dkt. 25-3 at 3].

### b. Clark's Representation in the Underlying Litigation

Clark received a copy of the OOIDA Policy on or around July 3, 2017, approximately three years after the Underlying Litigation commenced.  [Am. Compl. ¶ 11.].  The Amended Complaint does not indicate if or when Clark received the IAA, or explain Clark's delayed receipt of the OOIDA Policy.  SSI retained separate coverage counsel to analyze the OOIDA Policy and to seek reimbursement from OOIDA for the costs and fees incurred in defending the Underlying Litigation.  [*Id.* ¶¶ 13–14].  SSI's coverage counsel sent letters to OOIDA on October 10, 2017 and December 5, 2017 concerning OOIDA's coverage obligations but did not receive immediate responses.  [*Id.* ¶¶ 14–15].  According to the Amended Complaint, Clark knew of the OOIDA Policy, knew that the OOIDA Policy was a primary coverage policy that would apply to the Underlying Litigation, knew that coverage counsel was analyzing the OOIDA policy, and communicated with coverage counsel about the OOIDA Policy.  [*Id.* ¶¶ 12–13].

Clark represented JTP at a mediation session on December 17, 2017, where she settled the Underlying Litigation.  [*Id.* ¶ 16].  As part of the settlement, Clark signed a release ("the Release") on behalf of Gaines, Gaines Trucking, JTP, and SSI.  [*Id.* ¶¶ 16–17].  Pursuant to the Release, the co-defendants "generally and completely release[d] and discharge[d] each other and every other Released Party of and from any and all claims (including attorney's fees and costs of suit)….." [Dkt. 24 Exh. D].  The Amended Complaint alleges that Clark and her firm "knew, or should have known, that there was a claim for reimbursement/contribution towards the OOIDA [P]olicy." [Am. Compl. ¶ 20].  The Amended Complaint also alleges that Clark signed the release on behalf of SSI even though she only had authority to settle the Underlying Lawsuit for JTP.  [*Id.* ¶¶ 16–17].

3

On February 20, 2018, Counsel for OOIDA finally responded to SSI's coverage counsel and indicated that the Release defeated all claims for contribution against OOIDA.  [*Id.* ¶ 19]. Thus, the Amended Complaint alleges that, by signing the Release, Clark "did not preserve the indemnification and coverage claims against OOIDA."  [*Id.* ¶ 18].  As a result, SSI paid the first $1,000,000 of settlement and incurred approximately $750,000 in legal fees in the Underlying Litigation without any payment from OOIDA.  [*Id.* ¶ 21].

SSI filed this lawsuit against Clark and the Firm alleging that Clark's failure to preserve claims against OOIDA constitutes professional negligence (Count I) and breach of fiduciary duty (Count II).  [*See generally id.*].

## II. Procedural History

SSI filed its first complaint in this case on July 31, 2020.  [*See* Dkt. 1, Compl.].  On August 4, 2020, the Court issued an Order to Show Cause as to why the complaint should not be dismissed for lack of diversity jurisdiction due to a failure to plead complete diversity.  [Dkt. 3]. On August 17, 2020, SSI filed the Amended Complaint to cure the jurisdictional deficiencies in its initial pleading.  [Dkt. 12, Am. Compl.].  On October 13, 2020, Defendants filed the present motion to dismiss the Amended Complaint.  [Dkt. 13].

SSI appointed new counsel [Dkt. 27] who filed this Motion for Leave on February 19, 2021.  [Dkt. 30].  The proposed Second Amended Complaint recites the same facts, professional negligence claim, and breach of fiduciary duty claim alleged in the Amended Complaint, but adds a claim for negligence as to a third-party beneficiary.  [*See id.*, Exh. 1].  Defendants have opposed SSI's motion.  [Dkt. 35].  The Court heard argument from the parties on both motions via a virtual hearing on May 25, 2021.  [*See* Dkt. 44].

### III. Standard of review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

5

truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

IV. **Analysis**

    a. **Materials Outside of the Complaint**

SSI attaches several documents to its opposition brief, including portions of the IAA, OOIDA Policy, and SSI Policy discussed above. [*See* Dkt. 25-3–9]. SSI did not attach these documents to its Amended Complaint, and cites almost exclusively to these documents—rather than the Amended Complaint—in its opposition brief. [*See* Dkt. 25]. Defendants argue that the

Court should disregard SSI's opposition altogether, treat their motion as unopposed, and dismiss SSI's Amended Complaint.  [Dkt. 26 at 3–4].

This presents an unusual situation.  Typically, courts must determine the consequences of a defendant presenting and relying on matters outside the pleadings when filing a motion to dismiss.  *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  In such cases, district courts may consider evidence extrinsic to the complaint only if "the claims in the complaint are 'based' on" that evidence.  *Id.* (citations omitted).  Courts will review such documents because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'"  *Id.* (quoting *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir. 1993)).  If a defendant's evidence exceeds the claims in the complaint, a court will convert a defendant's motion to dismiss into a motion for summary judgment and allow the plaintiff to offer additional evidence as well.  *Id.*

Here, SSI—the plaintiff—has submitted the additional evidence at issue.  For the most part, these documents are "integral to or explicitly relied on" in the Amended Complaint.  *Id.* The Court does not believe that Defendants will suffer prejudice if the Court considers these documents when evaluating Defendants' motion.  However, some exhibits present information not relied on in the Amended Complaint, and which conflict with the Amended Complaint.  [*Compare* Dkt. 25-7 at 2 (indicating that the first demand letter to OOIDA was sent on August 18, 2017) and Dkt. 25 at 12 (arguing that SSI is entitled to recover fees and costs accruing after the August 18, 2017 OOIDA letter *with* Am. Compl. ¶ 14 (identifying October 10, 2017 as the date of the first demand letter to OOIDA)].  The Court will not consider any evidence that

7

conflicts with the Amended Complaint's factual allegations and rejects SSI's arguments that rely on such evidence.

The Court also declines to convert Defendants' motion to dismiss into a motion for summary judgment. *See Christie v. Pub. Serv. Elec. & Gas Co.*, No. CIV. 04-5978 (HAA), 2006 WL 462588, at *9–10 (D.N.J. Feb. 24, 2006) (refusing to convert a motion to dismiss into a motion for summary judgment after plaintiff submitted extrinsic materials alongside its opposition briefing).

### b. Legal Malpractice

To state a claim for legal malpractice under New Jersey law, a Plaintiff must establish "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." *Conklin v. Hannoch Weisman*, 145 N.J. 395, 416, 678 A.2d 1060 (1996); *DeAngelis v. Rose*, 320 N.J. Super. 263, 274, 727 A.2d 61 (App. Div. 1999); *Albright v. Burns*, 206 N.J. Super. 625, 632, 503 A.2d 386 (App. Div. 1986). "[A]n attorney is required to exercise on his client's behalf the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated and to employ reasonable care and prudence in connection therewith." *Vort v. Hollander,* 257 N.J. Super. 56, 61, 607 A.2d 1339 (App. Div.), *certif. denied,* 130 N.J. 599, 617 A.2d 1221 (1992) (quoting *Lamb v. Barbour,* 188 N.J. Super. 6, 12, 455 A.2d 1122 (App. Div. 1982) *certif. denied,* 93 N.J. 297, 460 A.2d 693 (1983)). *See also 2175 Lemoine Ave. v. Finco, Inc.,* 272 N.J. Super. 478, 487, 640 A.2d 346 (App. Div. 1994). "We have consistently recited that command in rather broad terms, for lawyers' duties in specific cases vary with the circumstances presented. 'What constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform.'" *Ziegelheim v. Apollo,* 128 N.J. 250,

260, 607 A.2d 1298 (1992) (quoting *St. Pius X House of Retreats v. Diocese of Camden,* 88 N.J. 571, 588, 443 A.2d 1052 (1982)).

Where an insurer hires counsel to defend the insured in an underlying lawsuit, "counsel routinely and necessarily represent two clients: the insurer and the insured." *Lieberman v. Emps. Ins. of Wausau*, 84 N.J. 325, 338, 419 A.2d 417, 424 (1980). For this reason, counsel owes a duty to the insured and the insurer unless and until their respective interests conflict. *Id.*

Defendants do not dispute that an attorney-client relationship existed between them and SSI. Instead, Defendants argue that SSI's malpractice claim must be dismissed because SSI failed to establish that Clark owed a duty to SSI to "preserve the alleged OOIDA Claim." [Dkt. 20-1 at 9]. Defendants state that the Amended Complaint and SSI's retention letter from the Firm confirm that Clark only owed a duty "to defend certain defendants in lawsuits seeking damages for personal injuries." [Dkt. 20-1 at 9]. According to Defendants, "[t]hese defense obligations did not include any duty to explore potential sources of contribution, indemnity, defense fees and costs, or property damage or to preserve such claims for [SSI]." [*Id.*]. Defendants maintain that they fulfilled their limited duties to SSI, and that SSI's coverage counsel was solely responsible for "evaluating, preserving, and pursuing" claims against OOIDA. [Dkt. 20-1 at 10].

The Court finds that issues of fact preclude dismissal of SSI's malpractice claim. Defendants ignore that SSI alleges generally that "Clark and the Firm owed a duty to competently and diligently represent [SSI]…." [Am. Compl. ¶ 25]. Competent representation in any attorney-client relationship requires, at minimum, "'a careful investigation of the facts of the matter … and the maintenance of communication with the client.'" *Cottone v. Fox Rothschild, LLP*, No. A-0420-12T4, 2014 WL 4287002, at *11 (N.J. Super. Ct. App. Div. Sept. 2, 2014)

9

(quoting *Ziegelheim*, 128 N.J. at 261)).  A jury could find that Defendants' failure to preserve claims against OOIDA resulted from failure to adequately investigate the case or communicate with the client, particularly because SSI alleges that Defendant Clark signed the Release without SSI's authorization.  [Am. Compl. ¶ 18].

The Court also rejects Defendants' attempt to neatly distinguish their obligations to SSI when defending the Underlying Litigation from their obligations to SSI when settling the Underlying Litigation.  The Court agrees that SSI retained Defendants principally to defend SSI and JTP in the Underlying Litigation and that the "degree of care" Defendants owed to SSI and JTP "is framed by the agreed service."[1]  *Lerner v. Laufer*, 359 N.J. Super. 201, 217, 819 A.2d 471, 483 (App. Div. 2003) (citing *Ziegelheim*, 128 N.J. at 260)).  However, a reasonable juror could still find that Defendants acted negligently in resolving the Underlying Litigation when Clark signed the Release without permission.  *See McGrogan v. Till*, 167 N.J. 414, 425, 771 A.2d 1187, 1193 (2001) (noting that legal malpractice arises where an "attorney engaged for a particular purpose was negligent in the handling of it." (quoting *Carney v. Finn*, 145 N.J. Super. 234, 236, 367 A.2d 458 (App. Div. 1976))).  Even if SSI's coverage counsel was responsible for "evaluating, preserving, and pursuing" claims against OOIDA [Dkt. 20-1 at 10], SSI alleges that

---

[1] At oral argument, Defendants argued for the first time that Clark's principal duty to Gaines and Gaines Trucking precluded a duty to SSI to "preserve" claims against OOIDA because working to preserve that claim would have created a conflict of interest between Gaines and SSI.  To address this argument, the Court hereby incorporates the arguments and representations made at the May 25, 2021 hearing.  This argument fails for two reasons.  First, Clark's failure to notify the parties of the potential conflict and withdraw from the case could itself be a breach of her professional duties.  *See Lieberman*, 419 A.2d at 425 ("The attorney's professional dereliction here was two-fold.  It first consisted of his failure to inform Lieberman of the clear conflict of interests and his subsequent failure either to withdraw from the case completely or to terminate his representation of either the insured or the insurer.").  Second, issues of fact concerning whether a conflict existed, whether Clark perceived a conflict, and whether Clark communicated with the parties about this conflict preclude dismissal at this stage.

Clark's conduct precluded coverage counsel from pursuing any such claims. Moreover, the nominal purpose for the Defendants' engagement did not permit Defendants to ignore SSI's related interest in having OOIDA contribute to the cost of defending and settling the underlying litigation where Defendants knew of the OOIDA Policy. *See Ziegelheim*, 128 N.J. at 261 ("[I]n accepting a case, the lawyer agrees to pursue the goals of the client to the extent the law permits."); *Dudas v. Gruenberg*, No. A-4465-15T1, 2018 WL 817165, at *2 (N.J. Super. Ct. App. Div. Feb. 12, 2018) ("[A]n attorney must take 'any steps necessary' to properly handle a case." (citing *Ziegelheim*, 128 N.J. at 260–61)). At this stage of the litigation, the Court cannot find as a matter of law that Defendants' duty to SSI was circumscribed such that that Clark was entitled to sign the Release without considering that the Release would limit SSI's ability to recover from OOIDA.

### c. Proximate Cause for Legal Malpractice and Breach of Fiduciary Duty

Defendants also argue that SSI's malpractice and breach of fiduciary duty claims fail to establish proximate cause because SSI cannot show that it would have succeeded in a lawsuit against OOIDA. [Dkt. 20 at 10–11]. One method of proving proximate cause for legal negligence and fiduciary duty claims is to show that plaintiff would have prevailed in the underlying legal action. *Jerista v. Murray*, 185 N.J. 175, 191, 883 A.2d 350, 359 (2005) (citing *Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 179 N.J. 343, 358, 845 A.2d 602 (2004)). In other words, a plaintiff must prove a "suit within a suit." *Id.* At the pleading stage, plaintiffs must show that "they could have presented a *prima facie* case" in the underlying lawsuit. *Id.*

Defendants argue that SSI could not have succeeded in the putative lawsuit against OOIDA because SSI failed to tender its defense to OOIDA at the beginning of the Underlying Litigation and because OOIDA did not refuse to defend in the Underlying Litigation or

11

indemnify SSI for the costs of the Underlying Litigation. [Dkt. 20-1 at 11]. Defendants rely on *Rooney v. West Orange Township* for the proposition that an excess insurer seeking reimbursement from a primary insurer for litigation and/or settlement costs must first demand that the primary insurer defend the underlying litigation, and the primary insurer must wrongfully refuse to defend. 200 N.J. Super. 201, 491 A.2d 23, 26 (App. Div. 1985). Defendants argue that because OOIDA did not refuse to defend the Underlying Litigation until after Clark signed the Release, SSI cannot satisfy *Rooney*'s wrongful-refusal requirement. [Dkt. 20-1 at 11–12].

### i. Legal Basis for Putative Claims Against OOIDA

*Rooney* addressed requirements in subrogation actions. *See Rooney*, 491 A.2d at 26 ("A necessary element of the accrual of the **subrogation right** of the secondary carrier is, however, the primary carrier's wrongful refusal to defend.") (emphasis added). SSI's Amended Complaint states alternatively and inconsistently that SSI would have sought recovery from OOIDA under a theory of contribution or indemnity,[2] but does not state that SSI would have sought recovery through subrogation. Despite these inconsistencies, the parties did not expressly brief the issue as to which legal theories could have or would have applied if SSI sued OOIDA.

Subrogation, indemnification, and contribution are distinct legal claims. *See Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325–29 (D.N.J. 2013) (discussing distinctions between subrogation, indemnification, and contribution). Two points of distinction are particularly relevant here. First, "an insurer's rights to equitable indemnity and contribution exist independently of the insured's rights." *Liberty Int'l Underwriters Canada*, 955

---

[2] The Amended Complaint refers to "reimbursement" [Dkt. 12 ¶ 14], "indemnification and coverage" [*id.* ¶ 18], "contribution and reimbursement" [*id.* ¶ 19], "reimbursement/contribution," [*id.* ¶ 20], and "contribution and/or indemnity" [*id.* ¶ 35].

12

F. Supp. 2d at 327 (citing *Potomac Ins. Co. of Ill. v. Pa. Mfrs. Assoc. Ins. Co.*, 425 N.J. Super. 305, 41 A.3d 586, 596 (2012)).  The law defines "indemnity" as "'[r]eimbursement or compensation for loss, damage, or liability in tort; esp[ecially] the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party for injuries resulting from a violation of common-law duty.'" *Id.* (quoting *Indemnity*, Black's Law Dictionary 784 (8th ed. 2004)).  Similarly, "contribution" is defined as "'[t]he right that gives one of several persons who are liable on a common debt the ability to recover proportionately from each of the others when that one person discharges the debt for the benefit of all[.]'" *Id.* (quoting *Contribution*, Black's Law Dictionary 352–53 (8th ed. 2004)).

By contrast, subrogation is "'[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities.'" *Id.* (quoting *Feigenbaum v. Guaracini*, 402 N.J. Super. 7, 19–20, 952 A.2d 511 (N.J. Super. 2008)).  In other words, "in a subrogation action an insurer steps into the shoes of its insured," assumes the rights of the insured, and is subject to the same defenses as the insured. *Montefusco Excavating & Contracting Co., Inc. v. Middlesex Co.*, 82 N.J. 519, 523 (1980) (citing *Am. Fire & Cas. Co. v. Material Handling Supply, Inc.*, No. CIV. 06-1545, 2007 WL 1296200, at *2 (D.N.J. Apr. 27, 2007), *aff'd*, No. CIV A 06-1545 JBS, 2007 WL 2416434 (D.N.J. Aug. 16, 2007)).

Second, contribution and indemnity rights "are invoked in instances when two or more insurers independently provided coverage for **the same risk** to the same insured, but one insurance carrier primarily undertook the defense or indemnification of the common insured in excess of its proportionate share of the loss." *Id.* at 328 (emphasis added).  "[T]he right to

13

equitable contribution arises only when all of the insurance carriers share the same level of obligation on the same risk as to the same insured." *Id.* (quoting *Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.*, No. Civ. A. 98–1060, 2000 WL 1721080, at *3, 2000 U.S. Dist. LEXIS 17688, at *7 (N.D. Cal. Nov. 13, 2000)).

Subrogation applies where multiple insurers cover **different** risks. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1298, 77 Cal. Rptr. 2d 296, 307 (1998) ("[W]here different insurance carriers cover different risks and liabilities with respect to the same insured, they may proceed against each other for reimbursement by subrogation rather than by contribution.") (discussing *State Farm Fire & Cas. Co. v. Coop. of Am. Physicians, Inc.*, 163 Cal. App. 3d 199, 204, 209 Cal. Rptr. 251, 253 (1984)). *Accord Liberty Int'l Underwriters Canada*, 955 F. Supp. 2d at 326 ("Subrogation is an equitable doctrine intended 'to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it.'" (quoting *Feigenbaum v. Guaracini*, 402 N.J. Super. 7, 20, 952 A.2d 511, 519 (App. Div. 2008))). Because primary and excess insurance carriers insure different risks "excess insurers are limited to equitable subrogation when seeking reimbursement from a primary insurer." *Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*, No. C-98-1060VRW, 2000 WL 1721080, at *5 (N.D. Cal. Nov. 7, 2000).

Based on SSI's pleadings and the few supporting documents before the Court, it appears that SSI would have had to pursue recovery from OOIDA through subrogation. The IAA between Gaines and JTP required Gaines "to carry public liability insurance … so as to fully protect [JTP] in the amount of $1,000,000 auto liability…." [Dkt. 25-3 at 2]. Gaines entered the OOIDA Policy to obtain this required insurance coverage, and the OOIDA Policy expressly states that it would be a primary insurance policy if Gaines entered an agreement with any

14

"lessee [that] requires [Gaines] to hold the lessee harmless." [Dkt. 25-3 at 7]. Because the IAA facially required Gaines to hold JTP harmless for the first $1,000,000 in coverage, the OOIDA policy was the primary policy. SSI's putative recovery from OOIDA would have come by way of the IAA between Gaines and JTP. Thus, for SSI to recover from OOIDA, it would have to "step into the shoes" of JTP to pursue rights which the IAA provided. *Montefusco Excavating & Contracting Co., Inc.*, 82 N.J. at 523. Moreover, the SSI Policy does not expressly identify the OOIDA Policy, but states that the SSI Policy would be "[e]xcess" over any policy held by a lessor pursuant to an agreement to hold JTP harmless. [Dkt. 25-3 at 7]. Because the SSI Policy and OOIDA policy insured different risks, SSI would have been limited to "subrogation when seeking reimbursement from" OOIDA. *Fireman's Fund Ins. Co.*, 2000 WL 1721080, at *5. While additional facts could change this analysis, it appears at this juncture that SSI would have had to seek recovery from OOIDA through subrogation.

### ii. Analysis of Putative Subrogation Claim

Assuming subrogation would have applied to SSI's putative claim against OOIDA we return to Defendants' argument that SSI could not have recovered from OOIDA because OOIDA never "wrongfully refused" to fund the litigation or settlement in the Underlying Litigation.

"[S]ubrogation is an equitable rather than a contractual doctrine applied in the interests of justice when one who is not a volunteer pays an obligation which should be imposed on another." *Jorge v. Travelers Indem. Co.*, 947 F. Supp. 150, 155 (D.N.J. 1996) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137 n.12, 83 S. Ct. 232, 235 n. 12, 9 L. Ed.2d 190 (1962)) (emphasis added). *See also id.* (discussing cases finding that the payor was not a volunteer). "It is unquestionably the rule that" a party does not act as a volunteer when "when an obligation is discharged by one not primarily liable for it, but who believes himself to be acting … in the

15

performance of a legal duty." *Camden Cty. Welfare Bd. v. Fed. Deposit Ins. Corp.*, 1 N.J. Super. 532, 552, 62 A.2d 416, 426 (Ch. Div. 1948). *See also Weir v. Fed. Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir. 1987) ("A payment is not voluntary if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment.").

To reiterate, the *Rooney* court found that an excess insurer who defends a lawsuit does so as a volunteer unless the excess insurer demands that the primary insurer defend the lawsuit and the primary insurer "wrongfully refuses" to do so. *Rooney*, 200 N.J. Super. at 206–07. In other words, the *Rooney* court found that the absence of a wrongful refusal determines conclusively that an excess insurer acts as a volunteer. Defendants argue that SSI could not have recovered from OOIDA under *Rooney* because, although demands were made upon OOIDA, OOIDA never "wrongfully refused" to defend or fund the Underlying Litigation.

The Court rejects Defendants' argument for two reasons. First, the *Rooney* court found that the excess insurer defended the underlying litigation voluntarily only after finding that the excess insurer knew or should have known of the primary insurance policy. *Rooney*, 491 A.2d at 24. It did not consider whether an excess insurer acts voluntarily when it defends an insured in litigation while believing it is the primary insurer. In other words, it does not explain how an excess insurer can forfeit its subrogation rights by failing to obtain wrongful refusal from another insurance company whose contractual duties are unknown. Importantly, the *Rooney* court reached this conclusion at the summary judgment stage based on a complete factual record, which the Court does not presently have. While it may be true that SSI knew or should have known of the OOIDA policy and that the OOIDA policy rendered the SSI policy an excess policy, and that SSI therefore defended the Underlying Litigation "voluntarily," the Court cannot make that determination at this stage of the litigation.

16

Instead, when construing the facts alleged in the Amended Complaint in favor of SSI, as the Court must at this stage, it is reasonable to infer that SSI "believed [itself] to be acting" out of a contractual duty to defend JTP, not as a volunteer, when it defended JTP in the Underlying Litigation. There is no dispute that Clark received the OOIDA policy approximately three years[3] after the Underlying Litigation commenced. There is also no dispute that, absent the OOIDA Policy, SSI would have been JTP's primary insurer and would have had a contractual duty to defend JTP in the Underlying Litigation. *See Burd v. Sussex Mut. Ins. Co.*, 56 N.J. 383, 388, 267 A.2d 7, 9 (1970) ("[A] carrier is obligated to defend an action whenever the complaint alleges a basis of liability within the covenant to pay.").

Second, the *Rooney* court did not address the possibility that an insurer would "refuse to refuse" a demand as OOIDA did here.[4] Under *Rooney* and Defendants' interpretation thereof, a primary insurer could reap two benefits by refusing to respond to demand letters altogether: it could avoid paying for an underlying litigation, and prevent an excess carrier from accruing subrogation rights. The Court cannot find as a matter of law that an excess insurer that funds litigation on behalf of an insured under these circumstances does so "voluntarily." *See Jorge v. Travelers Indem. Co.*, 947 F. Supp. 150, 156 (D.N.J. 1996) (finding that an insurance carrier did not act voluntarily where it accepted coverage, defended a lawsuit, and settled a judgment in order to "avoid entanglement in insurance coverage litigation" with another insurer).

In sum, the Court finds at this stage of the litigation that SSI's failure to obtain a "wrongful refusal" from OOIDA would not have precluded SSI entirely from recovering fees

---

[3] SSI retained defendants for the underlying litigation on or around June 19, 2014. [Dkt. 20-3]. Clark received the OOIDA Policy around July 3, 2017. [Am. Compl. ¶ 11].

[4] The Amended Complaint states that two demands were made to OOIDA, but that OOIDA did not respond at all until after Clark settled the Underlying Litigation. [Am. Compl. ¶¶ 14–17].

17

and costs incurred in defending and resolving the Underlying Litigation. As a result, SSI meets its pleading burden with respect to the suit-within-a-suit theory of causation for its professional negligence claim against Defendants.

During oral argument, Defense counsel argued that if the Court finds in favor of SSI on the suit-within-a-suit causation issue, the Court should limit SSI's recovery to costs and fees incurred after SSI's coverage counsel demanded participation from OOIDA on October 10, 2017. SSI conceded to this limitation in its opposition brief, but stated that its first demand to OOIDA occurred on August 18, 2017. [Dkt. 25 at 12]. As indicated above, this August 18, 2017 date does not appear in the Amended Complaint. Thus, SSI can only recover fees and costs incurred in defending the Underlying Litigation after October 10, 2017 as alleged in the Amended Complaint. Because the Underlying Litigation settled after this October 10, 2017 date, SSI's potential recovery includes settlement funds which OOIDA would have been legally obligated to pay.

This limitation is consistent with the rule that an insurer's duty to defend accrues when "proper demand [is] made." *Rooney*, 491 A.2d at 26. *See also Am. Home Assur. Co. v. St. Paul Fire & Marine Ins. Co.*, 233 N.J. Super. 137, 144, 558 A.2d 65, 69 (App. Div. 1989) ("[W]hatever contribution obligation would be imposed on the other primary insurer could not accrue until that insurer were requested to participate on some basis.").

### V.     Motion for Leave

SSI seeks leave to file a Second Amended Complaint. [Dkt. 30]. The proposed Second Amended Complaint recites the same facts, professional negligence claim, and breach of fiduciary duty claim alleged in the Amended Complaint, but adds a claim for negligence as to a third-party beneficiary. [*See id.*, Exh. 1].

Federal Rule of Civil Procedure 15 states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may exercise their discretion to deny leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962). Courts may also consider "additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Id.* at 150 (citing *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)).

Defendants argue that the Court should deny leave to amend for two reasons. First, they argue that justice does not require the Court to grant leave because SSI's proposed negligence claim merely duplicates SSI's existing malpractice and fiduciary duty claims. Defendants do not cite any authority for this proposition or tie this duplicative pleading argument to any of the factors justifying dismissal discussed above. Moreover, as SSI points out, the elements of the proposed negligence claim do not facially require SSI to prove an attorney client relationship. *Compare Townsend v. Pierre*, 221 N.J. 36, 51, 110 A.3d 52, 61 (2015) ("To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" (quoting *Polzo v. Cnty. of Essex*, 196 N.J. 569, 584, 960 A.2d 375 (2008))) *with McGrogan v. Till*, 167 N.J. 414, 425, 771 A.2d 1187 (2001) ("The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of

19

that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."). Thus, Defendants' first argument lacks legal and factual basis.

Second, Defendants argue that permitting amendment would unduly delay the case, cause hardship to Defendants, and waste judicial resources. [*See* Dkt. 35]. The Court disagrees. Although SSI has already amended its pleadings once, Defendants themselves acknowledge that the first amendment only addressed jurisdictional deficiencies and not SSI's substantive claims. [*See* Dkt. 35 at 8–9]. Thus, SSI has not "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed." *Mullin*, 875 F.3d at 149. Defendants also acknowledge that the proposed negligence claim will likely involve the same facts as the malpractice and fiduciary duty claims, and is therefore unlikely to expand discovery or otherwise harm Defendants. [*See* Dkt. 35 at 6–8].

Since Defendants will not suffer undue prejudice, the Court will grant SSI leave to file its Second Amended Complaint.

### VI. Conclusion

For the reasons discussed above, the Court will deny Defendant's Motion to Dismiss, and will grant SSI's Motion for Leave. An appropriate order shall follow.

June 17, 2021         /s/ Joseph H. Rodriguez

                                              Hon. Joseph H. Rodriguez, U.S.D.J.